**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| KENNETH WAYNE BROWN, | ) | |
| ID # 43444-177, | ) | |
| Movant, | ) | No. 3:14-CV-3255-D (BH) |
| vs. | ) | No. 3:11-CR-0249-D (1) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody 28 U.S.C. § 2255*, received September 8, 2014 (doc. 1), should be **DENIED** with prejudice.

**I. BACKGROUND**

Kenneth Wayne Brown (Movant) challenges his federal conviction and sentence in Cause No. 3:11-CR-249-D(1). The respondent is the United States of America (Government).

On October 19, 2011, Movant was charged by superseding indictment with conspiracy to commit theft from a program receiving federal funds in violation of 18 U.S.C. §§ 371, 666(a)(1)(A). (*See* doc. 27.)[1] He pled not guilty, and was tried before a jury. The evidence at trial established a check-cashing scheme whereby a claims adjuster for the City of Garland submitted false claims against the City, which then issued checks. The checks were made payable to Movant, other co-conspirators, and fictitious payees, and the co-conspirators deposited or cashed the fraudulently-obtained checks. Movant recruited family members, friends, and associates who were also used as payees for the checks. He was involved in the scheme from 1999 until March 2008. (*See* doc. 89-1

---

[1]  Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:11-CR-249-D(1).

at 4-8;[2] *see also United States v. Brown*, 727 F.3d 329, 333-42 (5th Cir. 2013).)  The jury convicted Movant on February 2, 2012.[3]  (*See* doc. 74.)

**A.     Presentence Report**

On March 22, 2012, the United States Probation Office (USPO) filed a Presentence Report (PSR) that applied the 2011 United States Sentencing Guidelines Manual (USSG).  (*See* doc. 89-1 at 11, ¶ 33.)  The PSR reflected that Movant was the payee on a city check he negotiated in the amount of $8,487.77.  He endorsed and negotiated 13 city checks issued in other individuals' names that totaled $93,777.71.  There were also 25 city checks made payable to individuals recruited by and liked to Movant that totaled $202,288.14, which the PSR found were reasonably foreseeable to Movant.  It attributed a total loss amount of $304,553.62 to him.  (*See id*. at 10, ¶ 28.)

The PSR calculated a base offense level of 6 because the statutory maximum term of imprisonment was 5 years.  (*See id*. at 12, ¶ 35.)  The loss amount was more than $200,000, but less than $400,000, so it added 12 levels for an offense level of 18.  (*See id.*)  It added three levels based on Movant's role in the offense, for a total offense level of 21, with a guideline range of 37 months to 46 months.  (*See id*., ¶¶ 38, 40; *id.* at 20, ¶ 80.)

Movant objected to the loss amount.  (*See* doc. 95.)  He argued that he did not recruit other individuals, so he should not have been accountable for checks made payable to them.  He also contended that he was only responsible for the $8,487.77 check, but was not accountable for the 13 other checks he endorsed and negotiated because he was not aware they were fraudulent.  (*See id.*)

---

[2]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3]   Movant's wife, Leah Michele Brown, was also charged by the same superseding indictment, tried with Movant, and convicted.

The USPO issued an addendum to the PSR. (*See* doc. 100-1.) It concluded that Movant was not accountable for 11 checks made payable to individuals he did not recruit. The addendum reflected that Movant was accountable for the $8,487.77 check, the 13 checks he endorsed and negotiated totaling $93,777.71, and 14 checks made payable to individuals linked to him totaling $110,493.52, for a total loss amount of $212,759. The loss amount was still more than $200,000, but less than $400,000, so the offense level did not change. (*See* doc. 100-1 at 3-8.)

The government objected to the addendum to the PSR and argued that the original loss amount of $304,553.62 was correct. (*See* doc. 106.)

At sentencing on May 18, 2012, the Court considered the loss amount, overruled Movant's objections, and sustained the government's objections. (*See* doc. 144 at 96-99, 103-08, 113-16.) It sentenced Movant to 42 months, with a two-year term of supervised release. (*See* doc. 114 at 2-3.)

**B.  Direct Appeal**

On direct appeal, Movant challenged the sufficiency of the evidence to support his conviction, the three-level enhancement for his managerial role in the offense, and the attribution of loss amounts for which he was not responsible. *United States v. Brown*, 727 F.3d at 333, 340.[3] The Fifth Circuit held that the evidence was sufficient to support the conviction and that the enhancement for his role in the offense was not erroneous. *Id.* at 334-41.

The Fifth Circuit also held that the loss amount was properly attributed to Movant.

> The Guidelines "create[ ] a sliding scale that increases the defendant's base offense level by zero to thirty [levels] depending on the amount of [actual or intended] loss." *United States v. John*, 597 F.3d 263, 279 (5th Cir. 2010) (citing U.S.S.G. § 2B1.1(b)(1)). They provide for a ten-level increase if the offense results in a loss of more than $120,000 but less than $200,000, U.S.S.G. § 2B1.1(b)(1)(F); and a twelve-level increase if the offense results in a loss of more $200,000 but less than

---

[3] Movant and his wife both appealed, and their appeals were consolidated.

$400,000, U.S.S.G. § 2B1.1(b)(1)(G). The district court adopted the PSR's calculation that Kenneth Brown was responsible for a $304,553.62 loss and Leah Brown was responsible for a $142,554.48 loss; found, based on their particular involvement in the conspiracy, that those loss amounts were "reasonably foreseeable" to each defendant; and adjusted upward their offense levels accordingly.

A district court's loss calculation, and its embedded determination that the loss amount was reasonably foreseeable to the defendant, are factual findings reviewed for clear error. *United States v. Hebron*, 684 F.3d 554, 560 (5th Cir. 2012) (loss calculation reviewed for clear error); *United States v. Hull*, 160 F.3d 265, 269 (5th Cir.1998) (foreseeability determination reviewed for clear error). The district court need only make "a reasonable estimate of the loss," *Hebron*, 684 F.3d at 560 (citing § 2B1.1 cmt. n. 3(C)), and, given the "unique position" it occupies to assess the loss amount, its loss calculation is entitled to appropriate deference, id.

. . .

The district court attributed to Kenneth Brown a loss amount of $304,553.62 based on the fourteen checks he cashed and twenty-five checks made payable to his friends, associates, and family members. Kenneth Brown contends that he "should only have been held responsible for the loss amount of the checks he actually endorsed."

Brown's position that he is not responsible for checks cashed by others participating in the scheme is contradicted by U.S.S.G. § 1B1.3(a)(1)(B), which provides that a defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." The district court's finding that the loss resulting from the checks cashed by other members of the conspiracy was reasonably foreseeable to Brown is well supported. Brown recruited others to join, cashed checks when others backed out, and was a central cog in the conspiracy: his spouse, children, aunt, cousins, in-laws, business partner, employees, and friends cashed one or more fraudulent checks.

*Id.* at 341-42. Movant's conviction and sentence were affirmed on appeal. *Id.*

C. **Substantive Claims**

Movant raises the following grounds:

(1) The Court applied the wrong version of the United States Sentencing Guidelines (USSG);

(2) Counsel was ineffective for failing to argue at sentencing and on appeal the applicable sentencing guideline.

4

  (3)  Counsel was ineffective for failing to argue at trial and on appeal the sufficiency of the evidence regarding the loss amount.

(3:14-CV-3255-D, doc. 1 at 5; doc. 7 at 2.) The Government filed a response to the § 2255 motion on November 4, 2014. (*Id.*, doc. 6.) Movant filed a reply brief on November 20, 2014, which clarified that in his first ground, he was alleging a violation of the Ex Post Facto Clause by the application of sentencing guidelines promulgated after the date of the offense. (*Id.*, doc. 7.)

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

5

### III. EX POST FACTO CLAUSE

Movant clarifies in his reply brief his contention in his first ground that application of sentencing guidelines promulgated after he committed the offense violated the Ex Post Facto Clause.

A district court must apply the version of the sentencing guidelines in effect at the time of sentencing, unless the application of that version would violate the Ex Post Facto Clause of the Constitution. *United States v. Myers*, 772 F.3d 213, 219 (5th Cir. 2014). Such a violation would occur if a defendant is sentenced under guidelines promulgated after the offense was committed, and the newer version provides a higher guideline range than the version in effect at the time of the offense. *Peugh v. United States*, 133 S.Ct. 2072, 2078 (2013).

Movant's offense ended in March 2008, and he was sentenced in May 2012 using the 2011 sentencing guidelines. Because he does not explain how there was an ex post facto violation, his claim is conclusory. Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

Moreover, there was no ex post facto violation. Under both the 2007 and 2011 versions of USSG §2B1.1(a)(2), the base offense level is 6 where the maximum term of imprisonment is less than 20 years. Under both versions of USSG §2B1.1(b)(1)(G), 12 levels are added where the loss is more than $200,000, but less than $400,000. Under both versions of USSG §3B1.1(b), three levels are added for a supervisory role in a criminal activity that involves five or more participants. Under both versions of USSG §5C1.1(f), based on a total offense level of 21 and a criminal history category of I, the guideline range is 37 months to 46 months. The 2011 version of the USSG did not provide a higher guideline range than the 2007 version. The application of the 2011 version of the USSG did not violate Movant's rights under the Ex Post Facto Clause, and there was no error

in using that version to sentence him.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends counsel at trial and on appeal were ineffective for failing to argue the applicable USSG and for failing to challenge the sufficiency of the evidence to support the loss amount.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams*

*v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the movant must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead,

8

to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

**A.     Applicable USSG**

Movant contends trial counsel and appellate counsel failed to argue that the 2007 version of the USSG should have been applied instead of the 2011 version. As discussed, the application of the 2011 version of the USSG did not violate the Ex Post Facto Clause and its use was proper. Trial and appellate counsel were not ineffective for failing to raise a meritless argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (counsel is not ineffective for failing to raise a meritless argument); *United States v. Phillips*, 210 F.3d at 348 (counsel is not ineffective for failing to raise a meritless claim on appeal). Also, Movant has not shown he was prejudiced, because the guideline sentencing range was the same under both versions of the USSG.

**B.     Loss amount**

Movant asserts trial and appellate counsel failed to challenge the sufficiency of the evidence to support the loss amount. Trial counsel litigated the loss amount by filing objections to the PSR and arguing the issue at sentencing. Appellate counsel raised the issue on appeal. Movant does not allege any additional argument that counsel should have presented. His conclusory claim does not

9

entitle him to relief. *See Miller v. Johnson*, 200 F.3d at 282. He has not shown deficient performance, and he has not shown prejudice.

## V. RECOMMENDATION

The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SO ORDERED** this 23rd day of September, 2016.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE